# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICK LINDSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OFFICER MICHAEL ORLANDO, Star 5594, | ) |
| OFFICER JAIME FALARDEAU, Star 9431, | ) No. 16 C 1967 |
| in their individual capacity, the CITY of | ) |
| CHICAGO, a municipal corporation, | ) Judge Rebecca R. Pallmeyer |
| DELTA AIRLINES, INC., a private | ) |
| corporation, and its agents THOMAS | ) |
| STEINFELS and MARCELLA PIRVU, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In June 2014, Plaintiff Rick Lindsey, a Utah resident, and his family were on the way home to Utah from a Father's Day celebration in the Midwest. The trip did not go smoothly. After a several-hour delay at O'Hare, Lindsey's brother, Randy Lindsey, had some kind of verbal altercation with Delta Airlines employees who demanded that he exit the airplane. Rick Lindsey followed his brother and the Delta employees onto the jet bridge, where, after some further conflict, two Chicago police officers arrested both brothers. Plaintiff was charged with aggravated battery to a police officer.

The criminal charge against Plaintiff Lindsey proceeded to trial a year later, and the court entered a judgment of acquittal. This lawsuit followed. Lindsey charges the two police officers with false arrest and failure to intervene under 42 U.S.C. § 1983 and seeks to hold the City of Chicago liable under a *Monell* theory. He also asserts state law malicious prosecution claims against the officers and the city, as well as two Delta employees and the airline itself under a *respondeat superior* theory. The Delta Defendants have moved to dismiss, and the City of Chicago asks the court to bifurcate *Monell* issues and stay discovery on those issues pending a

determination of the individual officers' liability. For the reasons explained here, both motions are granted.

## BACKGROUND

For purposes of this motion, the court recounts the well-pleaded facts of Lindsey's complaint and presumes they are true. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016).

In 2014, Rick Lindsey, a 54-year-old insurance executive (Compl. ¶ 11), arranged and attended a large family gathering in Wisconsin for Fathers' Day. (Compl. ¶ 12.) Lindsey is a resident of Utah (Compl. ¶ 5), and was planning to fly back home through O'Hare Airport with his brother Randy Lindsey and other family members on June 15, 2014. (Compl. ¶ 12.) The Lindseys' flight on Delta Airlines was delayed for several hours. (Compl. ¶ 13.) During the delay, Randy spoke with "one or both" of two Delta employees, Thomas Steinfels and Marcella Pirvu. (*Id.*) Plaintiff alleges the Delta employees "were rude to Randy," and Randy "exchanged words with them." (*Id.*) When boarding finally began, Randy had another exchange with Steinfels and Pirvu. (Compl. ¶ 14.) Though the family was permitted to board the plane, Steinfels and Pirvu entered the airplane before the flight took off to demand that Randy exit. (Compl. ¶ 15). Randy "argued with" Steinfeld and Pirvu and Plaintiff Lindsey "followed to see if he could resolve the situation and keep his brother on the flight . . . ." (*Id.*)

Plaintiff, his brother Randy, Steinfels, and Pirvu were engaged in a "heated," but in "no way physical" conversation on the jetway (Compl. ¶ 17), when two officers of the Chicago Police Department, Defendants Michael Orlando and Jaime Falardeau, arrived. (Compl. ¶ 16.) The officers "immediately turned to physical force," and "[w]ithout warning or provocation," Officer Orlando tackled Randy to the ground. (Compl. ¶ 18.) Plaintiff Rick Lindsey did not intervene, but did "express his displeasure verbally." (*Id.*) After the officers handcuffed Randy, they ordered Plaintiff to return to the terminal, and Lindsey's sons and father got off the plane to join

him. (Compl. ¶ 19). Officer Orlando directed Delta staff not to re-book the Lindseys. (Compl. ¶ 20.) Two other Chicago police officers who arrived at the gate then arrested Lindsey at Orlando's direction and escorted him, handcuffed, through the terminal. (Compl. ¶¶ 21, 22.)

Lindsey was charged by information with aggravated battery to a police officer, a Class 2 felony, and resisting arrest. (Compl. ¶ 23, 27.) These charges were fabricated, Plaintiff alleges, and were based on Defendant Orlando's false statement that Plaintiff had "pulled on [Orlando's] right shoulder" to obstruct the arrest of Plaintiff's brother Randy. (Compl. ¶¶ 22, 23, 25.) The Delta employees also allegedly acted improperly; Plaintiff claims that "[t]he Delta Defendants provided a false account of what occurred in the jetway, and Defendant Orlando relayed this false account in his testimony against Plaintiff at the preliminary hearing, which contributed to the information filed against Plaintiff." (Compl. ¶ 28.) Plaintiff learned that the Delta employees submitted false reports to the airline as well, stating that there was a physical altercation involving Randy and that Lindsey had been verbally abusive. (Compl. ¶ 29.)

The criminal case proceeded to trial about a year later in 2015. Without providing details concerning their testimony, Plaintiff alleges that both police officers and both Delta employees "testified against" him. (Compl. ¶ 30.) The judge entered a verdict of not guilty. (*Id.*)[1]

Lindsey brought suit in February 2016 against the police officers, Orlando and Falardeau, under 42 U.S.C. § 1983 (Counts I and II), and against the Delta employees, Steinfels and Pirvu, on a state law malicious prosecution claim (Count III). (*See generally* Compl.) Lindsey seeks to impose *respondeat superior* liability on Delta Airlines as Steinfels's and Pirvu's employer. (Compl. ¶ 10.) He has named the City of Chicago as a Defendant as well, on a *respondeat superior* theory as to the malicious prosecution claim (Compl. ¶ 6), and under the

---

[1] Lindsey alleges that the judge directed a verdict in his favor at the close of the prosecution's case (Compl. ¶ 30), but it appears from the partial transcript of the bench trial—supplied with the City's motion—that Lindsey's motion for a directed verdict was denied (Trial Tr. Apr. 14, 2015, Ex. C to Mot. to Bifurcate [26-3], at 4:8–9), though the judge did ultimately acquit Lindsey of the charges at the conclusion of the trial. (*Id.* at 13:23–14:4().

*Monell* doctrine with respect to his civil rights claims. The Delta Defendants have moved to dismiss the complaint against them. The City asks the court to bifurcate proceedings under the *Monell* doctrine. As explained below, the court grants the motion to dismiss without prejudice, and grants the motion to bifurcate.

### DISCUSSION

**Delta Defendants' Motion to Dismiss**

In ruling on a 12(b)(6) motion, the court accepts "the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must also draw all reasonable inferences in favor of the plaintiff. *See Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), presenting "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The elements of a claim for malicious prosecution, under Illinois law, are "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 10, 21 N.E.3d 486, 490 (citing *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 99, 954 N.E.2d 307, 326). A proceeding is not "commenced" by a private citizen when the person simply reports false information to the authorities, but when a police officer bases a complaint on the false information, "the officer's action may be attributed to the citizen." *Randall v. Lemke*, 311 Ill. App. 3d 848, 850, 726 N.E.2d 183, 185 (2d Dist. 2000). Put another way, a proceeding is considered "commenced" by a private citizen when the "prosecution is 'based upon' the false

4

information." *Id.* at 851; 726 N.E.2d at 186 (quoting Restatement (Second) of Torts § 653 cmt. g (Am. Law Inst. 1977)). The law does not attribute the commencement of a prosecution to a private person, even where the individual made an initial false report to authorities, where the authorities base the ensuing prosecution "upon separate or independently developed information." *Szczesniak*, 2014 IL App (2d) 130636, ¶ 11, 21 N.E.3d at 491 (citing *Randall*, 311 Ill. App. 3d at 851, 726 N.E.2d at 185–86). Thus, in *Szczesniak*, the owner of an auto parts store reported a customer to the police for bouncing checks and failing to pay; the customer contended the report was false, and ultimately was acquitted of criminal charges. *Id.* at ¶¶ 1–4, 21 N.E.3d at 489. The court granted summary judgment to the store owner on the customer's malicious prosecution claim, reasoning that a six-month police investigation that generated "separate and independent information" was a superseding cause of the arrest and prosecution. *Id.* at ¶ 13, 21 N.E.3d at 491–92.

A private person may be liable for "continuing" a prosecution, as well. But there is no liability where the person merely "appears as a witness and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution." *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 44, 684 N.E.2d 935, 945–46 (2d Dist. 1997) (quoting Restatement (Second) of Torts § 655 cmt. c (Am. Law Inst. 1977)) (internal ellipses omitted), *see also Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 584, 504 N.E.2d 756, 760 (1st Dist. 1986) (incorporating Restatement (Second) of Torts § 655 cmt. c); *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1062 (N.D. Ill. 2015).

Lindsey's allegations are, primarily, that Delta airlines staff called the police to the jetway (*see* Compl. ¶ 16),[2] which ultimately resulted in Lindsey's prosecution.  Lindsey's arrest and prosecution, however, were based upon the officers' false allegations that he battered them in the jetway (*see* Compl. ¶¶ 27), not the conduct preceding that incident.  The complaint does not support an inference that the prosecution was based on statements by Delta staff; indeed, the complaint is silent on what Steinfels and Pirvu may have initially reported.  Orlando himself was present for all the events that purportedly supported the charges against Plaintiff, and the complaint states that he was the sole witness at the preliminary hearing against Plaintiff.[3]  (Compl. ¶ 28.)  Plaintiff has also alleged that Steinfels and Pirvu submitted internal reports to Delta, falsely reporting that Plaintiff was verbally abusive (Compl. ¶ 29), but there is no allegation that those reports were part of the criminal proceeding.  Private citizens are liable for commencing a prosecution only where the authorities base the prosecution on the false information.  *Randall*, 311 Ill. App. 3d at 850, 726 N.E.2d at 185.  As it stands, the complaint does not contain sufficient allegations to find that the Delta Defendants commenced the prosecution.

Lindsey also argues that the Delta Defendants continued the prosecution by "testif[ying] against [Lindsey]" at his trial.  (Compl. ¶ 30.)  The allegations in the complaint concerning the Delta Defendants' trial testimony are brief:

> Ultimately, after approximately one year, the criminal case proceeded to trial. Despite that no physical violence occurred until Defendant Orlando attacked Randy Lindsey, each of the Defendant Officers and the Delta Defendants

---

[2] In fact, the complaint states only that the police arrived.  (Compl. ¶ 16.)  The court draws the inference for the purpose of this motion that the Delta Defendants called them to the jetway.

[3] Officer Orlando allegedly relayed some of the Delta Defendants' testimony at the preliminary hearing (Compl. ¶ 28), but the factual predicate for the charges against Lindsey was Lindsey's alleged encounter with Officer Orlando.  The complaint does not state what information the Delta Defendants provided through Officer Orlando, or what relevance that information had to the charges against Lindsey.

> testified against Plaintiff. When the prosecution rested its case the presiding judge directed a verdict in favor of Plaintiff.

(*Id.*) Though Plaintiff is not required to produce evidence sufficient to support a verdict at this stage, the court notes that he has not even alleged that the Delta testimony was false. Continuing a prosecution requires more than merely participating as a witness even where the witness knows the charge is groundless. *Adams,* 292 Ill. App. 3d at 44, 684 N.E.2d at 945–46 (quoting Restatement (Second) of Torts § 655 cmt. c).

The Delta Defendants' mere participation in Plaintiff's prosecution alleged in the complaint is not sufficient to support the malicious prosecution claim against them. The allegations are consistent only with the conclusion that they offered testimony in support of a groundless charge. Accordingly, the malicious prosecution claim against the Delta Defendants is dismissed without prejudice.

**City of Chicago's Motion to Bifurcate**

Lindsey brings two counts pursuant to 42 U.S.C. § 1983 alleging the police officers violated his constitutional rights: false arrest and unlawful detention (Count I), and failure to intervene (Count II). (Compl. ¶¶ 46–51.) Lindsey's claim against the City is based on *Monell v. Department of Social Services of New York*, which held that to hold a municipality liable for a § 1983 violation, there must be evidence that the violation was the product of an official or unofficial municipal policy or practice. 436 U.S. 658, 690 (1978). The complaint alleges that the City of Chicago encourages officers to make arrests without a legitimate basis (1) by "failing to adequately train and supervise its police officers in the determination of probable cause to arrest, such that the City is the moving force behind the constitutional violations Plaintiff suffered" (Compl. ¶ 57), and (2) by "failing to adequately investigate and review its police officers as well as failing to discipline similar misconduct in the past." (Compl. ¶ 58.) The

7

Defendant Officers have interposed a defense of qualified immunity in their answer. (Chicago Answer 17.)

The elements of a claim of false arrest are familiar. To prevail on such a claim, Lindsey must show there was no probable cause for his arrest. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). "Probable cause exists if 'at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). The factfinder assesses the facts available to the officer objectively; the subjective motivations of the officer are irrelevant. *Id.* at 247. But where an officer makes an arrest without probable cause, the doctrine of qualified immunity will shield the officer from liability if "a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cty.*, 674 F.3d 874, 878 (7th Cir. 2012) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). This, too, is assessed "by the standard of objective reasonableness." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015). Lindsey's failure to intervene claim requires allegations that (1) an underlying constitutional violation occurred, *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016), (2) the officer knew that Lindsey was being unjustifiably arrested, and (3) the officer had a realistic opportunity to prevent the harm from occurring, *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The City of Chicago and the officers, jointly represented, have moved to bifurcate trial of the *Monell* claim and stay discovery on that claim pending a determination that the individual officers caused a constitutional injury under either of Plaintiff's claims. (Mot. to Bifurcate [26].) Importantly, a finding in favor of Plaintiff on the *Monell* theory would render the City liable for any judgment ultimately rendered on the § 1983 claims—an attractive result for most plaintiffs, who

might otherwise be required to attempt to collect a substantial judgment against a modestly-paid municipal employee. But the City addresses that concern in its motion, having submitted a "Limited Consent to Entry of Judgment." (Ex. E to Mot. to Bifurcate [26-5].) In effect, the City has committed to pay compensatory damages and reasonable attorneys' fees if the factfinder determines that the officers violated Lindsey's constitutional rights, regardless of whether the officers are found to have qualified immunity. (*Id.* ¶¶ 4–5). The proposed consent to judgment explicitly denies the *Monell* allegations, however (*id.* ¶ 4), and denies that the City has policies, customs or practices that cause constitutional deprivations of any kind. (*Id.* ¶ 3).

The court has broad discretion to manage litigation, and may bifurcate the litigation of separate issues or claims if bifurcation "(1) serves the interests of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the non-moving party; and (3) does not violate the Seventh Amendment." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000); *see* FED. R. CIV. P. 42(b). Particularly, trial of a *Monell* claim can be stayed until after the determination of individual liability, in cases involving individual public officials and a municipal defendant, in the interest of avoiding "unnecessary complexity and effort." *Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015). The court has discretion to limit discovery on stayed *Monell* claims, as well. *See* FED. R. CIV. P. 26; *see also Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 929 (N.D. Ill. 2012).

Motions to bifurcate *Monell* claims from § 1983 claims against individual defendants have become routine. In making such motions, the municipality typically cites the substantial, potentially unnecessary, cost of litigating the question posed by *Monell*: whether a policy, practice or custom caused a constitutional violation. *See Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016). Bifurcating the claims makes particular sense where the *Monell* claim is wholly dependent on the outcome of the cases against the individual defendants. *See, e.g., Carr*, 908 F. Supp. 2d at 930 (bifurcating excessive force claim against individuals and *Monell* claim).

There are, however, situations where the *Monell* claim is not dependent on the outcome against the individual defendants. In *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2009), the mother of a pre-trial detainee who died in custody from meningitis won a verdict against Cook County and the Cook County Sheriff for failing to provide adequate medical treatment to her son. *Id.* at 297. The evidence at trial established that the medical technicians that provided services to the detainees—employees of Cook County—did not have access to the lockbox where medical request forms were kept and at times were unable to access the detainees to complete their rounds because of the Sheriff's understaffing. *Id.* at 298–99. Thus, the individual county employees were not deliberately indifferent to the detainee's suffering, but the evidence supported the jury's conclusion that the county itself was liable for Smith's death. *Id.* at 302. The County argued on appeal that the verdict in favor of individual employees meant that the County could not, as a matter of law, have caused the detainee's death, but the Seventh Circuit disagreed. *Id.* at 304. The court held that the two verdicts are not inconsistent: the individuals were effectively prevented from providing adequate treatment by the County's policies, which were the cause of the inmate's death. *Id.* at 305.

In cases like *Thomas*, the individual officers were liable only if they were *deliberately* indifferent—a showing negated by the existence of the county policy that prevented the employees from treating Smith. *See id.* at 305. In this case, in contrast, individual liability turns on two objective assessments: whether there was probable cause to arrest Lindsey and, if so, whether a reasonable officer could have made a mistake about whether probable cause existed. Lindsey need not make any showing concerning the officers' subjective mental state.

Several courts of this district have held that a "split" result like that in *Thomas* (a verdict in favor of individual officers but against the municipality) cannot occur where individual liability is premised on an objective standard. *See Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *4 (N.D. Ill. May 11, 2012) (Conlon, J.); *see also Andersen v. City of Chicago*, No.

16 C 1963, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016) (Kendall, J.); *Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014) (Lefkow, J.); *but see Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *3 (N.D. Ill. Dec. 6, 2013) (Coleman, J.) (finding it "theoretically possible" that a *Thomas* result would occur in an excessive force case because the officers raised qualified immunity). Lindsey argues a *Thomas* result is possible here because the officers could be found to have qualified immunity if the false arrest was in accordance with the city's custom or policies (that is, that the officers "just followed the rules") (Pl.'s Resp. in Opp. to the City Def.'s Mot. to Bifurcate [hereinafter Pl.'s Br.] [28], at 8), but qualified immunity, too, is assessed on an objective standard. *Olson*, 784 F.3d at 1099. The court has doubts that the City's failure to train or discipline the officers could make an officer's mistake about the existence of probable cause *objectively* reasonable, thereby causing an officer to have qualified immunity on that basis but leaving the City open to liability for the bad policy. The cases Lindsey produces in support of this proposition do not discuss the basis for the assertion of qualified immunity, and do not support the conclusion that a city's failure to train, discipline or investigate renders an officer immune from liability for an unlawful arrest. *See Giles*, 2013 WL 6512683, at *3; *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *12 (N.D. Ill. Apr. 9, 2012); *Martinez v. Cook Cty.*, No. 11 C 1794, 2011 WL 4686438, at *2 (N.D. Ill. Oct. 4, 2011).

In a case such as this one, the court believes it is unlikely that the City can be held liable under *Monell* unless the Defendant Officers themselves are found liable. And the City has agreed to entry of judgment against it if the individual officers caused a constitutional injury, regardless of whether the officers are found to have qualified immunity. (*See generally* Limited Consent to J.) Under that proposal, the City's liability turns on whether the individual officers violated Lindsey's constitutional rights. If they did, the City will pay the judgment; if they did not, the elements of *Monell* are not met and the case will be over. Plaintiff Lindsey will not be

required to litigate the issue of whether the officers made a reasonable mistake, driven by City policy or otherwise, in order to recover for the violation of his rights. Other courts of this district have found this concession weighs in favor of bifurcation:

> Although Clarett cites *Thomas . . .* for the proposition that a municipality may sometimes be found liable even if individual officers are not, she does not explain how such an outcome in this case could avoid inconsistent verdicts. From a review of the complaint, the Village's liability appears to depend upon establishing that one of the individual defendants violated Clarett's rights. Because the Village has agreed to concede its own liability if one of the officers is found liable, a verdict for Clarett would obviate the need for further litigation.

*Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011) (Gottschall, J.); *see also Horton v. City of Chicago*, No. 13-cv-6865, 2016 WL 316878, at *4 (N.D. Ill. Jan. 26, 2016) (Dow, J.) (slip copy); *Andersen*, 2016 WL 7240765, at *4.

The court need not at this time address the question of whether Lindsey is required to accept the City's consent to judgment, in which the City expressly disclaims *Monell* liability. (Limited Consent to J. ¶¶ 3–4); *cf. Giles*, 2013 WL 6512683, at *3 ("[I]t is also important to acknowledge that mere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs."). For now, the court merely holds that postponing litigation of the issue will promote judicial economy.

As Lindsey sees things, this ruling is not necessary; he asserts that he is willing, and has offered, to agree to reasonable limitations on the scope of *Monell* discovery. (Pl.'s Br. 5.) And, he urges, such discovery will not be wholly distinct from discovery on his individual claims against the officers: He will be seeking the production of training materials used generally and those used for training these individual officers, and will depose them and their supervisors. (*Id.*)[4] Such broad discovery may well be appropriate, but the court nevertheless believes that

---

[4] Lindsey also contends that an expert will be necessary regardless of whether the *Monell* claim immediately proceeds, as he will retain an expert on damages to establish

12

discovery on the *Monell* claim will be substantially greater in scope and depth: Lindsey alleges the existence of "policies and practices relative to police misconduct, specifically false arrest, that directly cause, and are the driving force behind, the unlawful and unconstitutional conduct of the Defendant Officers" (Compl. ¶ 34), and asserts that the "Defendant City's policies and practices fail to adequately train and supervise police officers and compound these failures by having no meaningful review, investigation, and discipline." (*Id.*) The complaint encompasses not only failure to train, but also failure to supervise, investigate, and discipline, related to both the individual defendants and other officers. Lindsey may ultimately be entitled to pursue all of these issues, but until there is a basis for a conclusion that the individual officers are liable, the court believes bifurcation is appropriate.

The court recognizes that some of its colleagues have denied motions to bifurcate in circumstances like these. Those decisions are, of course, not binding, and the court believes they are distinguishable. In *Hunter v. Sood*, the court denied a motion to bifurcate an individual § 1983 claim against a doctor at a prison from claims against supervisory employees of the Illinois Department of Corrections ("IDOC"). No. 13 CV 2569, 2014 WL 1613024, at *1 (N.D. Ill. Apr. 16, 2014). The plaintiff alleged that the doctor refused to treat him because the IDOC contract with the medical service provider decreased payments for services above a certain cap. *Id.* The court refused to bifurcate the claims because the individual claim was highly dependent on the policy claim—the plaintiff alleged that the doctor refused to treat him *because of* the policy—and therefore significant discovery on the policy would be allowed in the individual trial. *Id.* at *4. The constitutional violation in *Hunter* was predicated on deliberate indifference to the plaintiff's medical needs, as it was in *Thomas*, requiring a subjective inquiry into the mind of the doctor, *see id.* at * 1, and making his motivation highly relevant to his individual liability.

---

Lindsey's lost profits as an insurance executive. (*Id.* at 6.) But the fact that Plaintiff will disclose a damages expert has little to do with the effort required to engage in discovery supporting *Monell* liability.

Here, the constitutional violation occurs regardless of the mental state of the officers. *Juriss v. McGowan*, 957 F.2d 345, 349 (7th Cir. 1992) ("[W]e must ascertain the facts of which [the officer] was aware, but it is beside the point whether he believed those facts added up to probable cause."). *Terry v. Cook County Department of Corrections*, also a deliberate indifference case, is distinguishable for the same reasons, No. 09 C 3093, 2010 WL 2720754, at *3 (N.D. Ill. July 8, 2010) ("[I]t is simply too early to tell whether Plaintiff's claims are analogous to those in *Thomas*—which also is a deliberate indifference case—or more like the claims of plaintiffs in excessive force cases where bifurcation routinely has been granted."), as are *Awalt*, 2012 WL 1161500, at *11, and *Martinez*, 2011 WL 4686438, at *1.

## **CONCLUSION**

The Delta Defendants' motion to dismiss [19] is granted. Plaintiff has leave to file an amended complaint within 21 days. The City of Chicago's motion to bifurcate discovery and trial related to Count IV [26], the *Monell* claim, is granted. Discovery and trial related to the *Monell* claim alone is stayed pending further order.

ENTER:

Date: February 2, 2017

_____
REBECCA R. PALLMEYER
United States District Judge